# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case Number: 4:19-cr-00228 |
| | § | Judge Mazzant |
| BYRON ALCIDES BERGANZA ESPINA | § | |
| | § | |
| BYRON JOSE BERGANZA ROQUE | § | |
| a.k.a. "Chino" | § | |

## <u>MEMORANDUM OPINION & ORDER</u>

Pending before the Court is the Government's Motion for Leave to Conduct Foreign Witness Deposition (Dkt. #29) in the case of *United States v. Berganza Espina* (4:19-cr-00228).[1] Having considered the motion and the relevant assertions made before the Court, the Court finds the motion should be **GRANTED**.

## BACKGROUND

Defendants in this case are a father and son from Guatemala. The father, Defendant Berganza Espina ("Defendant 1"), was a Guatemalan drug trafficker in the late 1990s and early 2000s (Dkt. #23 at pp. 1–2). In 2003, law enforcement used a confidential informant to record Defendant 1's conversation with a co-conspirator, in which the three discussed a drug shipment (Dkt. #23 at p. 2). Later that year, Defendant 1 was arrested and extradited from Guatemala to face charges in the Southern District of New York (Dkt. #23 at p. 2). Though he was sentenced to approximately 21 years imprisonment, he served only seven (Dkt. #23 at p. 2).

The Government claims Defendant 1 did not cease his drug operations during his time in

---

[1] The Court consolidated the case of *United States v. Berganza Espina* (4:19-cr-00228) with the case of *United States v. Berganza Roque* (4:19-cr-00320) on October 22, 2021 (Dkt. #42). Prior to consolidation, the Government had also filed a Motion to Foreign Deposition in the case of *United States v. Berganza Roque* (4:19-cr-00320) (Dkt. #24).

prison (Dkt. #23 at p. 2). Rather, the Government alleges, Defendant 1 brought his sons into a "family business" (Dkt. #23 at p. 3). Further, when Defendant 1 left prison and returned to Guatemala, he allegedly "resumed his role at the helm of the family drug business" and continued working with his sons, one of which is Defendant Berganza Roque ("Defendant 2") (Dkt. #23 at p. 3).

On September 11, 2019, a grand jury charged Defendant 1 with Conspiracy to Manufacture and Distribute Cocaine Intending, Knowing, and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States, in violation of 21 U.S.C. § 963 (Dkt. #1). On December 12, 2019, the same grand jury charged Defendant 2 with identical crimes. On August 11, 2021, both Defendants were extradited to the United States. The Court granted the Government's Motion to Consolidate these cases (Dkt. #42). The Government now moves for leave to conduct a foreign witness deposition under Federal Rule of Criminal Procedure 15 (Dkt. #29). Both parties convened with the Court on October 1, 2021 for a hearing on this matter (the "Hearing").

## LEGAL STANDARD

The Speedy Trial Act, codified at 18 U.S.C. § 3161, requires a defendant's trial commence within 70 days of his indictment. *United States v. Parker*, 505 F.3d 323, 326 (5th Cir. 2007). Subsection (h) to § 3161 contains several exclusions that toll the 70-day deadline. *United States v. Rojas*, 812 F.3d 382, 409 (5th Cir. 2016). One exclusion allows a court to toll the 70-day deadline for "[a]ny period of delay, not to exceed one year" when a party officially requests[2] "evidence of any such offense and [] it reasonably appears, or reasonably appeared at the time the request was

---

[2] United States Code Chapter 18, Section 3292 defines an "official request" as "a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country." 18 U.S.C. § 3292(d).

made, that such evidence is, or was, in such foreign country." 18 U.S.C. § 3161(h). The moving

party must establish these facts by a preponderance of the evidence. *Id.*

Evidence located in a foreign country may include a witness that a party requests to depose.

Federal Rule of Criminal Procedure 15 governs criminal depositions. When a party conducts a

deposition in a criminal context, it is not for discovery purposes, but rather "to preserve testimony

for trial." FED. R. CRIM. P. 15(a). Rule 15 permits a party to "move that a prospective witness be

deposed," and "[t]he court may grant the motion because of exceptional circumstances and in the

interest of justice." *Id*. However, "because of the absence of procedural protections afforded parties

in the United States, foreign depositions are suspect and, consequently, not favored." *Simon v.

United States*, 644 F.2d 490, 498 n.12 (5th Cir. 1981). A district court has "broad discretion" in

granting a Rule 15(a) motion—it "considers the particular characteristics of each case to determine

whether the 'exceptional circumstances' requirement [is] satisfied." *United States v. Farfan-

Carreon*, 935 F.2d 678, 679 (5th Cir. 1991) (citing *United States v. Bello*, 532 F.2d 422, 423 (5th

Cir.1976)). A district court's ruling on a Rule 15 motion is reviewed on appeal for abuse of

discretion. *See, e.g.*, *United States v. Aggarwal*, 17 F.3d 737, 741–42 (5th Cir. 1994).

When the Government files a Rule 15 motion, it has a more stringent burden than the

defendant to establish the need for a foreign deposition. It must establish the unavailability of the

prospective deponent, as well as the materiality of the expected testimony.[3] *United States v.

Dillman*, 15 F.3d 384, 389 (5th Cir. 1994); *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir.

1993). Further, the government must show unavailability and materiality outweigh any

---

[3] Though it did not previously, Fifth Circuit precedent now requires a movant to establish materiality. *Compare Farfan-Carreon*, 935 F.2d 678 *with United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994) ("Although, as we indicated in dicta in *Farfan-Carreon*, 935 F.2d at 680, the textual words of Rule 15 do not expressly require 'materiality,' it is emphatically clear to us that the words 'in the interest of justice' call for the deposition to offer evidence that is material.").

countervailing considerations that would render the deposition unjust to the nonmoving party. *Drogoul*, 1 F.3d at 1552; *United States v. Sledziejowski*, No. 3:16-CR-101-B, 2018 WL 1757777, at *2 (N.D. Tex. Apr. 12, 2018).

"The Supreme Court has held that the [S]ixth [A]mendment's Confrontation Clause generally requires the Government to 'produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.'" *United States v. Martinez-Perez*, 916 F.2d 1020, 1023 (5th Cir. 1990) (quoting *Ohio v. Roberts*, 448 U.S. 56, 62 (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004)). Under Rule 15, a declarant is unavailable when he "is beyond the subpoena power of the court." *Farfan-Carreon*, 935 F.2d at 680. Inability to extradite a witness from a foreign country might also render a witness unavailable. *See United States v. Squella-Avendano*, 478 F.2d 433, 439 (5th Cir. 1973).

Even if the Government can establish unavailability, it must show the expected testimony is material to the prosecution. It is not enough for the Government to "simply assert that the forecasted deposition testimony is material." *Sledziejowski*, 2018 WL, at *4. Rather, the Government must show the testimony "lies at the very core of the charges in the indictment and enables the government to make its case against defendant." *Id.* (citing *United States v. Allie*, 978 F.2d 1401, 1405 (5th Cir. 1992) (internal quotations omitted)).

Once the Government establishes unavailability and materiality, the Court may consider other factors that could render the foreign deposition unjust—for example, whether the foreign deposition will "expedite, rather than delay, the administration of criminal justice." FED. R. CRIM. P. 15(a), Note, 1974 Amendment. But "[b]y the same token, it is error to rigidly adhere to a trial schedule regardless of the all important factors of unavailability and materiality." *Drogoul*, 1 F.3d at 1556.

Lastly, if the Government seeks to conduct the deposition without the presence of the defendant, it must make additional, factual showings: (1) the testimony could provide substantial proof of a material fact; (2) "there is a substantial likelihood that the witness's attendance at trial cannot be obtained"; (3) "the witness's presence for a deposition in the United States cannot be obtained"; (4) the defendant cannot be present in the country where the witness is located; and (5) "the defendant can meaningfully participate in the deposition through reasonable means." FED. R. CRIM. P. 15(c)(3).

## ANALYSIS

The Government seeks to depose a witness who is presently incarcerated in Guatemala and cannot travel to the United States, where he faces an outstanding warrant out for his arrest (Dkt. #29 at p. 5). Specifically, the Government asserts that the witness' incarceration alone prevents him from travel, but, in any case, the Guatemalan government would not release him for travel to the United States for the purpose of a deposition (Dkt. #29 at p. 6). If the witness arrives in the United States, he will be arrested, and the charges he faces here will override those for which he is serving time in Guatemala (Dkt. #29 at p. 6). This, the Government claims, is an exceptional circumstance that renders the witness unavailable (Dkt. #29 at p. 6).

Defendants refute these points. They argue that the Government does not "credibly show that [the witness] cannot testify in Texas in person" because "there is simply no basis in the Government's motion to credit the factual statement that if [the witness] is in the United States the authorities would be required to place him under arrest and he would not be allowed to return to Guatemala" (Dkt. #32 ¶ 11) (cleaned up). Defendants contend "the Government can dismiss the witness' American case without prejudice so he will not need to be arrested when he comes here"

(Dkt. #40 ¶ 4). They also suggest "he c[ould] be arrested and released on bail to serve the rest of his term in Guatemala before being returned to the United States" (Dkt. #40 ¶ 4).

The Court finds the Government has established the witness' unavailability. The witness, who is incarcerated in Guatemala, is "beyond the subpoena power of the Court." *Farfan-Carreon*, 935 F.2d at 680. Further, the Government does not have the ability to extradite the witness from Guatemalan prison, which is an additional factor that "might also render a witness unavailable." *See Squella-Avendano*, 478 F.2d at 439. As to Defendants' arguments for alternative ways the witness could appear in the United States, the Court is not persuaded. At the Hearing, the Government asserted it lacks the power to convince the United States federal government to drop criminal charges or release the witness on bail after arrest. Further, the Government is not required to go to such extremes to demonstrate unavailability, and the defense does not point to a case that requires otherwise.

Next, the Government argues the expected testimony from this witness is material. It asserts the witness "is one of the few people who has the knowledge (and willingness) to tell the truth about the nature of [the Defendants'] criminal enterprise" (Dkt. #29 at pp. 7–8). The Government claims the witness' testimony "will focus on his personal interactions with the Berganza family, including" a failed cocaine transaction and related drug debt that the Government believes will corroborate the testimony of other co-conspirators (Dkt. #29 at pp. 7–8). Thus, "[s]ecuring his testimony is essential to doing justice in this case" (Dkt. #29 at p. 7).

Defendants responded at the Hearing that this evidence is not material because there is no corroboration to the expected testimony. Further, Defendants assert, if "[t]he Government claims that [the witness] is the only witness to a drug transaction for which they accuse the [D]efendant[s] . . . they cannot be permitted to attempt to convict [Defendants] of a crime where

the only evidence the jury will see is an out-of-court deposition" (Dkt. #32 ¶ 6). This, the Defendants claim "would violate any sense of basic fairness and justice" (Dkt. #32 ¶ 6).

The Court agrees that the foreign witness testimony is material to establish a co-conspirator relationship between Defendants. Indeed, at this point in the prosecution, the Government has not shown the Court what, if any, evidence it has against Defendant 2, save for the foreign witness' expected testimony. This testimony thus "lies at the very core of the charges in the indictment." *Drogoul*, 1 F.3d at 1558. And without this testimony, it is unclear how the Government would establish the necessary co-conspirator relationship between Defendants.

Defendants' arguments regarding fairness and justice runs squarely with their argument that "this would be the first time in American history" where testimony from a foreign deposition would be the sole evidence used to convict a defendant who cannot even confront a witness in a live format (Dkt. #38 ¶¶ 5–7). Specifically, Defendant 2 contends the Government has no other evidence to connect him to any drug transactions except for the word of a "convicted murderer[]" (Dkt. #38 ¶ 5). Further, Defendants claim that where courts have allowed such testimony in a deposition format, the defendant is present. This argument highlights the double-edged sword the Government faces in arguing this motion. For the Court to allow the foreign deposition, the evidence must be "material"—which the Court has so found. In the same vein, this presents an issue of fairness and justice the Court must carefully consider, as "foreign depositions are suspect and, consequently, not favored." *Simon*, 644 F.2d at 498 n.12.

The Government points to several cases where courts have admitted testimony from a foreign witness deposition in various formats and the appellate court upheld such decisions (Dkt. #39 at pp. 2–11); *see, e.g.*, *Allie*, 978 F.2d 1401 (affirming district court's deposition rulings regarding videotaped testimony); *United States v. Keithan*, 751 F.2d 9 (1st Cir. 1984) (affirming

district court's decision to allow remote testimony and admission of video depositions); *United States v. Johnpoll*, 739 F.2d 702 (2d Cir. 1984) (affirming district court's allowance, over defense objections, of remote deposition of Swiss witnesses); *Drogoul*, 1 F.3d 1546 (reversing district court's denial of motion for foreign deposition because witnesses were located in Italy and their presence at trial was uncertain).

In addition to the many cases where courts have allowed foreign depositions and video testimony for trial purposes, the Court is persuaded by Rule 15's specific instructions for allowing foreign depositions in the absence of the defendant. FED. R. CRIM. P. 15(c)(3). In such circumstances, the Government must make additional, factual showings: (1) the testimony could provide substantial proof of a material fact; (2) "there is a substantial likelihood that the witness's attendance at trial cannot be obtained"; (3) "the witness's presence for a deposition in the United States cannot be obtained"; (4) the defendant cannot be present in the country where the witness is located; and (5) "the defendant can meaningfully participate in the deposition through reasonable means." FED. R. CRIM. P. 15(c)(3).

The Government has made each of these factual showings. As mentioned *supra*, the expected testimony is material to showing a conspiracy between the Defendants, and the witness cannot attend trial in the United States. For the same reasons the witness cannot attend trial, he cannot appear in the United States for a deposition (Dkt. #29 at p. 6).

The Government has additionally shown that the [D]fendants cannot be present for the deposition in Guatemala because the Guatemalan authorities will not likely permit Defendants to attend the deposition there, and secure transportation and continuing custody cannot be assured at the witness's location. In Special Agent Klein's Declaration (Dkt. #29-1), she asserts that, based on her experience with drug trafficking and work with these specific Defendants, "it would be

extremely difficult to transport them to and from Guatemala securely and without incident for a deposition. Their attendance . . . would pose immense security and safety risks to all involved" (Dkt. #29-1 ¶ 9). The Government also asserts that because Defendants are known drug traffickers to Guatemalan authorities, "[i]t is doubtful that Guatemala would permit either [D]efendant to return to the country" (Dkt. #39 at p. 5). To support this contention, the Government cites to case law where depositions proceeded without the presence of the defendant in situations with "far fewer security risks" (Dkt. #39 at p. 6).

The Government has provided numerous options for assuring the Defendants' meaningful participation in the deposition, despite their physical absence. First, counsel for both Defendants will be present, and each attorney will be able to fully cross-examine the witness (Dkt. #39 at p. 6). Further, "[s]ecure real-time communication could also be provided to allow both defendants to speak to their counsel during the course of the deposition" (Dkt. #39 at p. 6). Lastly, the Government assures the deposition will be videotaped (Dkt. #39 at p. 6). The Government points to many cases where such participation was considered meaningful, most of which took place without the modern technology to which both parties now have access (Dkt. #39 at pp. 5–8).[4]

For these reasons, the Court finds the Government has made the showings required under Rule 15(c)(3) for conducting a foreign deposition without the presence of the Defendants. Because it has established these case-specific requirements, the Court also finds that permitting the foreign deposition would not be unjust to either Defendant.

## CONCLUSION

It is therefore **ORDERED** that the Government's Motion for Leave to Conduct Foreign Witness Deposition (Dkt. #29) is hereby **GRANTED**. Accordingly, under 18 U.S.C. § 3161(h),

---

[4] Many of the cases cited in support of the Government's argument were decided prior to the year 2000.

the Speedy Trial Act 70-day clock is tolled for a maximum of one-year, beginning October 19, 2021.

**IT IS SO ORDERED.**

**SIGNED this 22nd day of October, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE