# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff,* | § | |
| v. | § | Case No. 4:19-cr-228 |
| | § | Judge Mazzant |
| BYRON ALCIDES BERGANZA | § | |
| ESPINA, | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Release under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #81). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

On September 11, 2019, a Grand Jury for the Eastern District of Texas, Sherman Division returned a two-count Indictment, which included a Forfeiture notice, against Defendant Byron Alcides Berganza Espina (Dkt. #1). Count 1 charged Defendant with Conspiracy to Manufacture and Distribute Five Kilograms or More of Cocaine Intending, Knowing, and with Reasonable Care to Believe that the Cocaine will be Unlawfully Imported into the United States, in violation of 21 U.S.C. § 963 (Dkt. #1 at p. 1). Count 2 charged Defendant with Manufacturing and Distributing Five Kilograms or More of Cocaine Intending, Knowing, and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported to the United States, in violation of 21 U.S.C. § 959 (Dkt. #1 at p. 2).

On August 25, 2022, Defendant appeared before United States Magistrate Judge Christine A. Nowak and entered a plea of guilty to Count 1 of the Indictment pursuant to a written, Federal Rule of Criminal Procedure 11 (c)(1)(C) binding Plea Agreement (Dkt. #67 at p. 4). On September

2, 2022, United States District Judge Amos L. Mazzant, III, signed the Order Adopting United States Magistrate Judge's Report and found Defendant guilty of Count 1 of the Indictment (Dkt. #64). The Court accepted Defendant's plea but deferred acceptance of the Plea Agreement until after review of the Presentence Report (Dkt. #67 at p. 4). On August 2, 2023, Defendant was sentenced to 240 months imprisonment, five years of supervised release, and Count 2 was dismissed (Dkt. #71 at p. 2–3). Defendant filed his Motion for Compassionate Release on December 12, 2024 (Dkt. #81).

## LEGAL STANDARD

### I.    18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A)    the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)     extraordinary and compelling reasons warrant such a reduction; or

(ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons]." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines (the "Guidelines") became effective. The Commission amended the

---

[1] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust

---

[2]   The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

his administrative remedies or wait for the lapse of 30 days after the warden received the request."
*Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . [b]ut an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III.    U.S.S.G.'s Policy Statement

### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D). First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness

with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Commonplace conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant

is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought

---

[3]    *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F.Supp.3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP.").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the

---

[4] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

> (A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such

---

[7] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

> family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Villegas*, No. 4:13-CR-200-SDJ, 2025 WL 350229, at *5 (E.D. Tex. Jan. 30, 2025). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should

evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to § 1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.    Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s]

a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this Circuit, non-retroactive changes are irrelevant.

## IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the

broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

## ANALYSIS

## I.    Defendant has met § 3582 (c)(1)(A)'s exhaustion requirement.

As a threshold matter, the Court will first address the exhaustion requirement. Defendant claims that he exhausted his administrative remedies by seeking compassionate release from the warden (Dkt. #81 at p. 7). On August 1, 2024, Defendant requested compassionate release from

---

[8]  18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

the warden based on health concerns, which the warden denied on October 7, 2024 (Dkt. #81–4 at p. 1). "[B]efore seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)A)). Here, Defendant sought relief through the facility's warden and filed his Motion after receiving a response. Accordingly, the Court finds that Defendant satisfied the administrative exhaustion requirement.

## II.    Defendant has not shown under § 3582(c)(1)(A) that "extraordinary and compelling reasons" warrant a sentence reduction.

Defendant argues he suffers from "glaucoma, hernia, hypertension, hyperlipidemia, bronchitis, . . . a decrease in visual acuity," and the "lifelong effects of numerous gunshot wounds" (Dkt. #81 at pp. 3–4). Because of these medical conditions, he argues that he has established "extraordinary and compelling" reasons for release (Dkt. #81 at pp. 3–4). Defendant also claims his experience of surviving the Covid-19 pandemic while incarcerated is extraordinary and compelling enough on its own (Dkt. #81 at pp. 3–4). Additionally, Defendant argues that his age and time served as factors to consider for his release (Dkt. #81 at p. 2). Defendant does not raise any other arguments within U.S.S.G. § 1B1.13(b) (*See* Dkt. #81 at p. 2). Ultimately, the Court finds Defendant's medical circumstances and age do not meet extraordinary and compelling reasons for release under § 3582(c)(1)(A). The Court will first analyze whether Defendant's medical conditions and experience with the pandemic meet the extraordinary and compelling reasons for releases as outlined in U.S.S.G. § 1B1.13(b)(1). Next, the Court will analyze whether Defendant's age presents an extraordinary and compelling reason for release under U.S.S.G. § 1B1.13(b)(2).

**A.    Defendant does not the meet the requirements for release based on the medical circumstances outlined in U.S.S.G. § 1B1.13(b)(1).**

The Sentencing Commission enumerated four separate medical circumstances a court should consider when evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D). The first medical circumstance is whether the defendant is suffering from a terminal illness. *Id.* at § 1B1.13(b)(1)(A). A terminal illness is defined as a serious and advanced illness with an end-of-life trajectory. *Id.* Defendant claims that he suffers daily pain from "glaucoma, hernia, hypertension, hyperlipidemia, bronchitis, and a decrease in visual acuity" (Dkt. #81 at p. 4). However, he does not specifically claim that any of his medical conditions are in and of themselves a "serious and advanced illness with an end-of-life trajectory." (*See* Dkt. #81).

Defendant's arguments are similar to those raised in *United States v. Thompson*. 984 F.3d at 434. There, the Fifth Circuit found that commonplace conditions such as hypertension and high cholesterol are insufficient to amount to a terminal illness. *Id.* (reasoning that both conditions are easily treatable, and high cholesterol affects approximately 12% of Americans). In short, the conditions present in *Thompson* were commonplace in society and not the type that would meet the definition of a terminal illness as contemplated by the Sentencing Commission. *See id.* As in *Thompson*, Defendant has presented the Court with a list of commonplace conditions, none of which qualify as an advanced illness, nor do they warrant an end-of-life diagnosis. *See id.* Moreover, there is no evidence that medication has not, and cannot, adequately treat Defendant's conditions (Dkt. #81–1 at pp. 36–37). *See id.* Additionally, Defendant's medical records do not show any diagnosis of a terminal illness (*See* Dkt. #81–2). Therefore, Defendant has not shown that release under U.S.S.G. § 1B1.13(b)(1)(A) is warranted. *See United States v. Torres*, No. H-93-210-1, 2025 WL 1654590, at *3 (S.D. Tex. June 11, 2025).

15

The second medical circumstance a court should consider has two elements. *See* U.S.S.G. § 1B1.13(b)(1)(B). The first element requires the Court to consider is whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." *See id.* If the defendant suffers from such a medical condition, then the Court should evaluate whether that condition substantially impairs his ability for self-care. *See id.* Here, Defendant asserts he is suffering from near blindness (Dkt. #81 at p. 4). A defendant must bring forward evidence that he suffers from the condition he complains about and cannot just rely on mere assertions to prove the condition exists. *See United States v. Johnson*, No. 13-00180-01, 2020 WL 7774913, at *3 (W.D. La. Dec. 30, 2020) (finding that the defendant did not establish his medical condition because he did not provide any documentation to support his contention); *see also United States v. Delgado*, No. 3:17-CR-242-B, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020). Currently, Defendant's medical records do not indicate that a properly trained and qualified physician has diagnosed him as blind (Dkt. #81-2). Thus, his assertion is not sufficient to meet the evidentiary burden a defendant must carry. *See Johnson*, 2020 WL 7774913, at *3.

Even assuming that Defendant has gone blind in one eye, his blindness would only meet the first required element. U.S.S.G. § 1B1.13(b)(1)(B). As the district courts in this Circuit have recognized, blindness is a "serious condition." *See, e.g.*, *United States v. Chavez-Ceja*, 4:17-CR-30(1), 2020 WL 6688905, at *1-4 (E.D. Tex. Nov. 10, 2020). However, blindness does not necessarily entail that Defendant is encountering a substantial diminishment in his ability to care for himself or perform daily activities on his own. *See Chavez-Ceja*, 2020 WL 6688905, at *1-4 (concluding defendant with blindness did not qualify for compassionate release based on his

blindness); *United States v. Morales,* 4:13-CR-200(4), 2020 WL 5505904, at *4 (E.D. Tex. Sept. 11, 2020) (stating defendant's legal blindness did not substantially diminish his ability to provide self-care). Defendant has not presented any evidence that his blindness has substantially diminished his ability to care for himself or perform daily activities (*See* Dkt. #81; Dkt. #81–2). Thus, he has not carried his burden. *See Chavez-Ceja,* 2020 WL 6688905, at *1-4; *Morales,* 2020 WL 5505904, at *4; *see also United States v. Anderson*, No. 3:21-cr-51-KHJ-LGI, 2023 WL 417404, at *2–3 (S.D. Miss. Jan. 25, 2023); *United States v. Phillips*, No. 4:13-cr-200(4), 2020 WL 5514132, at *3 (S.D. Miss. Sept. 13, 2020).

Moreover, in *United States v. Love* the Fifth Circuit held that the defendant's medical conditions of hypertension and being overweight were not an "extraordinary and compelling reason[] warranting compassionate release . . ." because the defendant's conditions were "'managed effectively by medication' and [did] not 'substantially diminish the ability of the defendant to provide self-care.'" 853 F. App'x at 987 (quotations omitted). Here, Defendant's medical records indicate that his conditions are being effectively managed through medication (*See* Dkt. #81–2). Further, Defendant has presented no evidence that any of his conditions have substantially diminished his ability to care for himself (Dkt. #81-2). Defendant's medical records contain numerous pages of prescription records showing that he has received medications and devices to help alleviate the effects of his conditions (Dkt. #81-2).The only documents in Defendant's medical records that substantiate his current complaints of "near blindness" are his own notes to the doctor. (Dkt. #81-2 at pp. 109–16). No such diagnosis from a physician is located in his records (Dkt. #81-2). Thus, Defendant's release based on "near blindness" is unwarranted.

Defendant also asserts that he is suffering from the "lifelong effects of numerous gunshot wounds" that he received prior to his second incarceration (Dkt. #81 at p. 4). Yet, he does not expand on the medical hardships the gunshot wounds have inflicted (*See* Dkt. #81). Further, Defendant has not provided the Court with any documents that point to the effects of his gunshot wounds, nor has he explained what specific problems he faces because of these prior wounds (*See* Dkt. #81-2). Notably, he has made no indication that the effects from the gunshot wounds have substantially diminished his ability to provide for himself nor that medications have failed to effectively treat them (Dkt. #81-2). Thus, Defendant has not shown his release based on U.S.S.G. § 1B1.13(b)(1)(B) is warranted.

The third medical circumstance a court should consider is whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This category focuses on the lack of resources and medical care available in some correctional facilities. *Id.* Defendant's medical history does not show that he is suffering from any medical condition that requires long-term or specialized medical care that he is not already receiving. (*See* Dkt. #81-2). Likewise, Defendant's medical records do not demonstrate a lack of medical resources (*See* Dkt. #81-2). Defendant's records provide detailed and expansive information indicating the evaluations, treatments, and prescriptions he has received during his incarceration (*See* Dkt. #81-2). If anything, his records show that he is receiving the appropriate care for his conditions (*See* Dkt. #81–2). Thus, Defendant has not satisfied U.S.S.G. § 1B1.13(b)(1)(C).

The fourth medical circumstance a court should consider is whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). Defendant asserts "nothing could be more extraordinary and compelling than surviving the pandemic in jail while still being at grave risk due to his age and medical history which will likely cause him to die or go fully blind in prison" (Dkt. #81 at pp. 3–4). However, in this Circuit, as well as around the United States, courts have repeatedly found that the COVID-19 pandemic is not an extraordinary and compelling reason for release under U.S.S.G. § 1B1.13(b)(1), even when inmates are in poor health. *See, e.g.*, *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir.2021)) (denying relief to a hypertensive stroke survivor concerned by the potential effects COVID-19 could have on their health); *see also*, *Blair*, 2023 WL 8223470, at *3; *Williams*, 2023 WL 8019023, at *4.

The text of U.S.S.G. § 1B1.13(b)(1)(D) explicitly states that the risk of an infectious disease or public health emergency must be "imminent" and "ongoing" to warrant an extraordinary and compelling reason for release. *Id*. Covid-19 is no longer an emergency risk at this time. [9] Thus, it does not provide an extraordinary and compelling reason for Defendant's release. Accordingly, Defendant has not met his burden on any of the four of the medical circumstances outlined in U.S.S.G. § 1B1.13(b)(1) to warrant compassionate release based on medical history.

---

[9]  End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

**B.    Defendant does not meet the requirements for release based on age in U.S.S.G. § 1B1.13(b)(2).**

To be released based on U.S.S.G. § 1B1.13(b)(2), a defendant must meet three requirements: (1) he must be 65 years of age; (2) he must be "experiencing a serious deterioration in physical or mental health because of the aging process;" and (3) he must have "served at least ten years or 75% of . . . his imprisonment, whichever is less." Defendant cannot meet U.S.S.G. § 1B1.13(b)(2)'s third requirement because he admits that he has only served approximately 40% of his sentence (Dkt. #81 at p. 2) ("[Defendant] has served between about 30% and 40% of his term of incarceration."). Because all elements must be met under U.S.S.G. § 1B1.13(b)(2), Defendant has not met his burden. Thus, Defendant's release based on age is not warranted.

**III.    The 18 U.S.C. § 3553(a) factors do not support Defendant's Motion for Compassionate Release.**

Even if "extraordinary and compelling" reasons existed, the sentencing factors under 18 U.S.C. § 3553(a) support the denial of Defendant's motion. Defendant was convicted of Conspiracy to Manufacture and Distribute Cocaine Knowing that it will be Unlawfully Imported into the United States (Dkt. #67 at p. 1). Moreover, Defendant was previously convicted for one count of Conspiracy to Import and Distribute with Intent to Import Cocaine and one count of Conspiracy to Distribute and Possess with Intent to Distribute Cocaine (Dkt. #67 at p. 4).

Additionally, Defendant led, organized, and coordinated the shipments of cocaine for the conspiracy (Dkt. 67 at pp. 7–8). Defendant's role as a leader of the conspiracy is serious offense and weighs against release. *See United States v. Tanous*, No. H-16-170-1, 2021 WL 861363, at *3 (S.D. Tex. Mar. 8, 2021) (finding that the defendant's role as a leader in the drug manufacturing and distribution conspiracy weighed against compassionate release); *United States v. Cage*, No. 98-194, 2023 WL 3211869, at *3–4 (E.D. La. May 1, 2023). Further, even though Defendant argues

that his cooperation with the government in this case supports his request for release, his past cooperation was already accounted for at sentencing (Dkt. #76 at p. 8; Dkt. #81 at pg. 5). After weighing the sentencing factors, the Court is not convinced by Defendant's arguments. The Court finds that granting Defendant's release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for his offense, nor adequately deter criminal conduct or protect the public. *Chambliss*, 948 F.3d at 693.

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)); *see also Dillon*, 560 U.S. at 819. Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Here, Defendant did not meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i). Accordingly, the Court finds that Defendant's motion must be denied.

## CONCLUSION

It is therefore **ORDERED** that Motion to Reduce Sentence – First Step Act (Dkt. #81) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 16th day of June, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

21